USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                :

IN RE ELYSIUM HEALTH-CHROMADEX    :
LITIGATION                                            :      17-cv-7394 (LJL)
                                                :
                                                :      OPINION AND ORDER
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Elysium Health, Inc. ("Elysium" or "Defendant") moves, pursuant to Fed. R. Civ. P. 15(d), to amend its counterclaims. Dkt. No. 166.

      This is a false advertising and unfair competition case between the supplier of a dietary ingredient and its former wholesaler and now competitor. The dispute concerns an ingredient called nicotinamide riboside ("NR") that is supplied by Plaintiff ChromaDex, Inc. ("ChromaDex" or "Plaintiff"), which holds a patent for NR, and that is used for cellular metabolism, mitochondria, and cellular repair. It is an ingredient in dietary supplements and other products. Elysium is a dietary supplement start-up that was ChromaDex's wholesaler from 2014 to mid-2016. Elysium has manufactured a product that includes NR ("Basis") since 2015. After the decline of the supplier relationship between Elysium and ChromaDex in 2016, ChromaDex entered the market with a product called Tru Niagen, which also contains NR. The two companies are now direct competitors.

      The current relationship between the two companies, to put it mildly, is not friendly. ChromaDex and Elysium are parties to a separate lawsuit pending in the Central District of California, alleging breach of fiduciary duty, trade secret misappropriation, and breach of contract claims. This action was initiated on September 25, 2017 when Elysium sued

ChromaDex for false advertising, trade libel, deceptive business practices and tortious interference with business relations for allegedly making a sham citizen petition with the United States Food & Drug Administration ("FDA").  ChromaDex followed suit on October 25, 2017 by suing Elysium for false advertising.  The two cases were consolidated on November 3, 2017.  Dkt. No. 27.  On January 3, 2019, Chief Judge McMahon granted summary judgment as to Elysium's sham petition claims based on the Noerr-Pennington doctrine.  Dkt. Nos. 63, 69.

Since then, the case has followed a torturous path, with each party amending its pleadings and the other immediately doing the same, seemingly oblivious to any objective of bringing the case to conclusion or of the imperative of the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  ChromaDex filed an amended complaint on March 27, 2019.  Dkt. No. 80.  Elysium then filed an amended answer and counterclaims on April 10, 2019.  Dkt. No. 82.  On July 1, 2019, Elysium was granted leave to file a second amended counterclaim, without opposition.  Dkt. Nos. 88, 89.  On February 9, 2020, ChromaDex filed a motion to file a second amended complaint.  Dkt. No. 117.  On February 10, 2020, not to be outdone, Elysium filed a motion for leave to file a third amended counterclaim.  Dkt. No. 121.  On February 25, 2020, each party consented to the other's amendments, Dkt. No. 136, and so, on that same date, this Court granted ChromaDex leave to file its second amended complaint and Elysium leave to file its third amended counterclaim.  Dkt. Nos. 137, 138.

Discovery was initially stayed until February 8, 2019 due to the extensive motion practice.  A case management plan was entered on March 21, 2019, after motion practice, providing for all discovery to be completed by December 20, 2019.  Dkt. No. 77.

The deadlines have since been extended on several occasions:

- On August 22, 2019, the Court extended the discovery schedule by six months, to provide that all discovery would be completed by June 20, 2020. Dkt. No. 92. In that order, Judge McMahon noted that the case was already two years old. *Id.*

- On October 15, 2019, Judge McMahon entered an order granting an extension of six months due to the California trial, but warned that she would not grant any further extensions of discovery. Dkt. No. 95.

- On February 14, 2020, Elysium requested a four-month extension of the deadlines for discovery. At the time, fact discovery was to be completed by April 11, 2020, and all discovery was to be completed by June 20, 2020. In the letter requesting an extension, Elysium noted, in part, that it was represented by new counsel and that new counsel had discovered that prior counsel had engaged in minimal discovery. Dkt. No. 129.[1] That same day, the Court denied the request for an extension. Dkt. No. 130.

The COVID-19 pandemic intervened, and the parties renewed their requests for extensions of discovery. Specifically:

- On March 20, 2020, the parties renewed their request for a four-month extension for the completion of fact discovery by August 11, 2020 and all discovery by October 20, 2020. Dkt. No. 146. The Court granted that request. Dkt. No. 148.

- On June 23, 2020, the parties requested yet another extension of discovery, this time for the completion of fact discovery to December 11, 2020 and the completion of all discovery to March 17, 2021. Dkt. No. 149. The Court granted that motion only in part and extended the deadlines for fact discovery to October 11, 2020 and all discovery to December 20, 2020. Dkt. No. 150.

- In August 2020, a discovery dispute arose with respect to Elysium's document production. Dkt. Nos. 152, 155, 157. Elysium claimed that it could not produce certain of the requested records because its offices were closed due to the pandemic. Dkt. No. 155. As a result, and after a conference, the Court agreed to yet another extension: all fact discovery was to be completed by December 11, 2020 and all discovery was to be completed by February 22, 2021. Dkt. Nos. 159, 160.

- Finally, on November 13, 2020, the parties jointly requested yet another extension to address the production of Elysium records which had been inaccessible as a result of the pandemic. Dkt. No. 164. The parties requested that the fact deposition deadline be adjourned by an additional 60 days, which they represented would be sufficient to resolve any outstanding document discovery issues and to take depositions. *Id.* The Court agreed to extend the deadline for fact discovery and fact depositions to February 9, 2021 and all discovery to April 23, 2021. Dkt. No. 165. The Court

---

[1] Elysium also noted that the parties had both filed motions for leave to amend their pleadings which would require additional discovery. *Id.*

3

> required the parties to submit the joint pretrial order by June 22, 2021 and to be ready for trial on 48 hours' notice beginning on August 9, 2021. *Id.*

As the case currently stands, in its Second Amended Complaint, ChromaDex asserts causes of action for false advertising and unfair competition under the Lanham Act and deceptive trade practices under New York General Business Law § 349. As alleged by ChromaDex, Elysium falsely advertises to consumers, *inter alia*, that (i) it was the "first" to market a supplement proven to raise NAD+ levels, which are critical for healthy cellular metabolism, mitochondria, and cellular repair, implying that it (and not ChromaDex) is the pioneer in this space; (ii) it was involved in the 25+ years of research and development surrounding NR (when, ChromaDex claims, Elysium was not founded until 2014); (iii) FDA approves or endorses Basis (when FDA does not); (iv) Basis is backed by clinical studies (even though the studies were based on ChromaDex's NR); (v) Elysium is the exclusive licensee of a patent for the use of NR in slowing aging (when, ChromaDex claims, it is the licensee); and (vi) Basis is safe and effective; and (vii) Basis can prevent or treat serious diseases (including cancer, Alzheimer's, heart disease, and diabetes), reverse cognitive decline, and increase lifespan (even though there is no study supporting such claims and some that show the opposite).[2]

In its Third Amended Counterclaims, Elysium alleges ChromaDex has similarly engaged in false advertising and unfair competition under the Lanham Act and deceptive trade practices under New York General Business Law § 349, as well as copyright infringement under the Copyright Act. It claims: (i) ChromaDex has falsely claimed that the FDA has made an affirmative determination that Tru Niagen is safe and effective (when it has not); (ii) ChromaDex has falsely claimed that it is the only authorized or legitimate seller of NR, giving consumers the

---

[2] This description of ChromaDex's claims and the following description of Elysium's claims are drawn from the parties' helpful status report, dated February 28, 2020. Dkt. No. 142.

false impression that other NR products such as Basis are counterfeit (when, in fact, Basis contains NR but just from a different source); and (iii) ChromaDex has falsely claimed that Tru Niagen is clinically proven to raise NAD levels and is more effective than Basis and is safe.

As stated above, as things currently stand, all fact discovery is scheduled to be completed by February 9, 2021.

## DISCUSSION

Elysium seeks to amend its counterclaims in three respects.

First, Elysium seeks to amend the counterclaims to remove its copyright infringement claim under the Copyright Act. That request is unopposed and the motion is GRANTED in that respect. Second, Elysium seeks to amend its complaint to add an allegation about an October 2020 change to the ChromaDex website at issue in this action. That request is unopposed and the motion is GRANTED with respect to that allegation.

Third, and significantly, Elysium seeks to amend the counterclaims to add approximately 25 new paragraphs, spanning numerous pages, alleging that ChromaDex made representations to consumers about ChromaDex's research that were designed to convey the false impression that Tru Niagen could mitigate, prevent, treat, or cure COVID-19. The first of the press releases alleged to be false and misleading was issued by ChromaDex on April 20, 2020 and references preliminary research findings that suggested that "a NAD precursor, such as NR, may support innate immunity to coronaviruses." Dkt. No. 168-1 ¶ 154. A July 9, 2020 press release stated that "preclinical findings [in mouse cells] indicat[e] Niagen . . . inhibits replication of a form of Coronavirus, the virus that causes COVID-19 infection, in mouse cells." *Id.* An October 6, 2020 press release stated that a study "reported patients with mild-to-moderate COVID-19 experienced a 29% reduction in recovery time when receiving the standard care in combination with a nutritional protocol including [NR]." *Id.* The counterclaims allege that consumers were

misled by these statements, first in April 2020, when a consumer posted a product review to Tru Niagen's website on Amazon, which said that "there's some new promising research that Tru Niagen might help boost immunity." *Id.* ¶ 158. On May 9, 2020, a consumer posted a review noting that the product was "expensive" but "allegedly effective in helping to prevent Covid-19." *Id.* ¶ 159. On July 9, 2020, one consumer noted on Amazon that he was taking Tru Niagen "[d]aily . . . to help prevent COVID," and another consumer a few days later, posted a product review titled, "The Potential of Tru Niagen Against Covid-19." *Id.* ¶ 160.

On November 17, 2020, the FDA and the Federal Trade Commission ("FTC") issued a joint warning letter to ChromaDex advising that the regulators had reviewed ChromaDex's websites and determined that ChromaDex had offered Tru Niagen as "intended to mitigate, prevent, treat, diagnose, or cure COVID-19 in people," that these products were not approved for such usage and were misbranded, and that ChromaDex had misleadingly represented its products as safe and/or effective for the treatment or prevention of COVID-19. Dkt. No. 168-21. The federal regulators directed ChromaDex to either immediately correct the violations noted in the warning letter or, if it believed that its products were not in violation of the Federal Food, Drug, and Cosmetics Act ("FDCA"), to include its reasoning and supporting information for the FDA's consideration. *Id.* On November 23, 2020, ChromaDex filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") disclosing the warning letter and reporting that it had removed the allegedly misleading statements from its website and from social media. Dkt. No. 168-1 ¶ 171; Dkt. No. 168-29. The FDA and FTC posted the warning letter to their websites on December 1, 2020. Dkt. No. 168-1 ¶ 170.

The motion to amend to add the COVID-19 related allegations is DENIED. Federal Rule of Civil Procedure 15(d) provides: "On motion and reasonable notice, the court may, on just

terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "A supplemental pleading may . . . be used to add additional facts or events relating to liability or to change the relief requested." *Aktiebolag v. Andrx Pharms., Inc.*, 695 F. Supp. 2d 21, 30 (S.D.N.Y. 2020) (quoting 3 James W. Moore, Moore's Federal Practice § 15.30 (3d ed. 2009)).

The Court has "broad discretion" whether to permit an amendment pursuant to Rule 15(d). Fed. R. Civ. P. 15(d) advisory committee note to 1963 amendment; *see also Weeks v. N.Y.S. (Div. of Parole)*, 273 F.3d 76, 89 (2d Cir. 2001) (noting the Second Circuit reviews "denial of a motion to supplement the complaint for abuse of discretion"). "The threshold consideration for the district court is whether 'the supplemental facts connect [the supplemental pleading] to the original pleading.'" *Weeks*, 273 F.3d at 88 (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)); *see Vance v. Venettozzi*, 2019 WL 4415551, at *3-4 (N.D.N.Y. Sept. 16, 2019). A motion under Rule 15(d) can be denied when "the claim or defense asserted in the supplemental pleading [bears] little or no relationship to the original pleading." 6A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1510 (3d ed. 2020). While leave to file a supplemental pleading is to be freely granted under Rule 15(d) as under Rule 15(a), the court may deny a motion based on "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino*, 71 F.3d at 66; *see Aktiebolag*, 695 F. Supp. 2d at 30; *Interpublic Grp. of Cos., Inc. v. Fratarcangelo*, 2002 WL 31720355, at *1 (S.D.N.Y. Dec. 4, 2002).

Here, the supplemental facts bear only the most attenuated relationship to those in the Third Amended Counterclaims. Elysium argues that the new allegations regarding COVID-19 relate directly to Elysium's earlier allegations that ChromaDex made false and misleading

7

allegations about the disease-curing abilities of Tru Niagen contained in Paragraphs 138 to 151 of its Third Amended Counterclaims.  Dkt. No. 167 at 2-4; Dkt. No. 170 at 2-4.  Paragraph 146 of the Third Amended Counterclaims points to a blog post of a ChromaDex "affiliate" in which the affiliate states, in part:

> ChromaDex isn't allowed to say that NR treats any disease, because the FDA has not approved that. But the FDA does not regulate me, so I am free to tell you that the scientific evidence is growing that NR supplements replenish cellular NAD, which can protect against MANY ailments, including Alzheimers, Heart Disease, Parkinson's Disease, Breast Cancer, alcohol induced liver poisoning, chemotherapy induced peripheral neuropathy, organ injury from sepsis and in my own experience, Restless Legs Syndrome (RLS). You can find out more here: AboutNAD.com.

Dkt. No. 141 ¶ 146.

The blogger describes himself as "a ChromaDex associate" and states that he "may earn a small commission on purchases from ChromaDex if you were referred directly from this site and completed a purchase."  *Id.* ¶ 140.  Elysium alleges that he is one of ChromaDex's shareholders, "who purports to be a non-practicing lawyer," and who maintains a website called "right-of-assembly.org."  *Id.*  The blogger has direct links to a website maintained by ChromaDex, *id.* ¶ 146, and Elysium alleges in conclusory terms that ChromaDex "implicitly vouched for [the blog's] content," *id.* ¶ 145 (147) and that "ChromaDex is responsible for these statements by its affiliate," *id.* ¶ 148.  Elysium adds that ChromaDex "impliedly endorses them by placing advertising on the blog and/or disseminating posts."  *Id.*  ChromaDex argues that because of these allegations, a principal focus of discovery and a principal issue for trial (and summary judgment) will be the extent to which it bears responsibility for posts authored and published by

a third party purported shareholder who merely identifies himself as an associate. Dkt. No. 169 at 9-11.[3]

The new allegations in the proposed Fourth Amended Counterclaims are entirely different. They relate to representations and advertisements different from those contained in the prior pleading, regarding characteristics of ChromaDex's product different from those at issue in Elysium's prior pleading, and made at different times and through different means than those in the Third Amended Counterclaims, and thus would raise entirely different issues of fact and law. They do not represent "merely part of the same old cause of action" but would be a "new cause of action." *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (2004). Specifically, the new allegations relate to press releases issued by ChromaDex itself regarding the results of clinical studies. The new allegations based on those studies and the allegations regarding the blogger do not relate to one another, and the discovery necessary to establish or defend against each would be irrelevant with respect to the other. Whether ChromaDex misdescribed the clinic studies and whether its press releases left consumers with the misleading impression that Tru Niagen mitigates, prevents, treats, diagnoses or cures COVID-19 is not relevant to the critical questions raised by the existing pleading: whether ChromaDex is responsible for the content of the blogs, whether that content is misleading, and whether Elysium can recover for misleading content on the blog. Nor would discovery about whether ChromaDex controlled the blogger or his content be relevant to whether the press releases in the proposed Fourth Amended Counterclaims are inaccurate or left a misleading impression. The two sets of allegations each stand, and must rise or fall, on their own.

---

[3] ChromaDex plans to move for summary judgment on the claims related to the blogger. Dkt. No. 169 at 10 n.3.

9

Second, Elysium's filing is made with undue delay and smacks of bad faith. The question of whether there is undue delay is not measured solely by the absolute number of days it took the moving party to move to supplement, but by the length of time in relation to court deadlines. A delay of months might be explicable in a case where the deadline for discovery and trial is long off; it is inexplicable in a case where the end of discovery is rapidly approaching. *See Lowry v. Eastman Kodak Co.*, 14 F. App'x 27, 30 (2d Cir. 2001) (summary order) (affirming denial of motion for leave to supplement because plaintiff "did not seek to amend his complaint until five months after the new evidence surfaced"); *Doran v. N.Y.S. Dep't of Health Office of the Medicaid Inspector Gen.*, 2018 WL 5095670, at *1-3 (S.D.N.Y. Oct. 18, 2018) (denying motion to supplement where facts sought to be added "were known or knowable nine or ten months before plaintiffs first raised with the Court the possibility of moving for leave to file a Third Amended Complaint").

Such is the case here. Accepting Elysium's proposed new allegations as true, it was victim of false advertising as early as April 2020 and would have known, by the April and May 2020 Amazon reviews by consumers, that the false advertising had an impact on consumers. ChromaDex's second allegedly misleading press release was announced in July 2020, after which two additional consumers posted similar reviews. These facts were not hidden. The allegedly misleading statements were contained in ChromaDex corporate press releases. The consumer reaction was posted to an extraordinary widely-viewed retail website. Elysium does not allege it was ignorant of the usages for which Tru Niagen was approved and those for which it had not been approved. By April 2020, it had spent years litigating claims regarding Tru Niagen. Yet, Elysium did not propose an amendment in connection with these statements that— if their claims are to be credited—injured them until shortly before Christmas 2020. During that

time, Elysium—along with ChromaDex—approached the Court on three occasions for a request for an extension of discovery. As Elysium knew, the Court granted those requests only grudgingly and only because Elysium beseeched the Court that it needed more time to produce the requested documents as a result of the COVID-19 crisis. At no time in any of those letters and in any of those conferences did Elysium mention that it was considering amending its counterclaims to add an entirely new set of allegations regarding a different set of alleged misstatements, with a different author, regarding a different subject. Had Elysium raised the issue back in June 2020 when the parties requested a further extension of discovery, the Court could have dealt with it then. If Elysium persuaded the Court that the claims were related, the Court could have considered whether the supplemental pleading was appropriate and, if so, permitted discovery into it as well as permit Elysium more time to complete discovery. But Elysium said nothing. As a result, the Court set a firm deadline of February 9, 2021 for the conclusion of all fact discovery and, if necessary, trial in August 2021. Elysium's motion on December 14, 2020 comes too late.

Elysium responds that the appropriate date by which to measure its delay is the November 23, 2020 date of ChromaDex's SEC filing reporting the FDA and FTC warning letter and indicating that ChromaDex had removed the allegedly misleading statements from its website and social media. Dkt. No. 167 at 12. It explains that "ChromaDex's false advertising became increasingly pervasive" and that it was not until fall of 2020 that is claim ripened. Dkt. No. 170 at 5. By that account, it waited less than a week. But in a false advertising case, the wrongful act is the false advertising. It is not the government's statements expressing its belief, without a hearing or the benefit of a ChromaDex response, that the advertising is false. If Elysium's claim is to be believed, it was the victim of "a campaign of false advertising through

11

the spring, summer, and fall." Dkt. No. 170 at 1. But the pleaded facts do not support that there was a change in ChromaDex's advertising only in late fall. From Elysium's proposed pleadings, Elysium suffered injury eight months before it made this motion. Conspicuously, it does not answer ChromaDex's challenge for Elysium to disclose when it first learned of its claim. Nor does it provide any evidence to dispute the conclusion that it would have known of both the press releases and the reactions on Amazon, as well as the fact that Tru Niagen was not approved for any uses regarding COVID-19 or determined to be safe or effective for such uses, as early as eight months before its motion but simply chose not to bring a claim. In light of the history of this case, the most likely conclusion is that Elysium's motion is opportunistic both to take advantage of the FDA and FTC letter and to stave off the forthcoming end of discovery and trial preparation.[4]

Third, although "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend," *State Techers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981), here permitting Elysium to supplement its pleadings would cause undue prejudice to ChromaDex. It would require ChromaDex "to expend significant additional resources to conduct discovery and prepare for trial" and it would "significantly delay the resolution of the dispute." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citation omitted); *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009) (Chin, J.) (denying supplemental counterclaim "because it would unduly delay

---

[4] *POM Wonderful LLC v. Organic Juice USA, Inc.*, 2010 WL 3912222 (S.D.N.Y. Sept. 29, 2010), upon which Elysium relies, is distinguishable. *See* Dkt. No. 170 at 5. In that case, at the time the motion to supplement was made, no trial date had been set and no motions for summary judgment were pending. Here, by contrast, a trial date has been set and the parties have not asked for a summary judgment motion deadline when setting case deadlines or requesting extensions of such.

the resolution of this claim"); *cf. Weeks*, 273 F.3d at 88 (a district court "ha[s] discretion to consider its own interests in systematic trial preparation and an orderly trial, and to deny the motion, as it did"). Elysium admits that new discovery will be required but asserts that it will be "limited." Dkt. No. 167 at 13. It does not dispute that that "limited" discovery would "require ChromaDex to re-image the email accounts of relevant custodians, re-do document searches; re-hire contract attorneys to review documents; identify additional expert witnesses; and potentially seek third-party discovery." Dkt. No. 169 at 12; *see* Dkt. No. 170 at 6. Nor does it deny ChromaDex's assertion that it has "produced nearly all of its responsive documents—nearly 70,000—by May 18, 2020," and that "[s]ince then, it has produced only a handful of documents—approximately 60—in response to miscellaneous Elysium requests." Dkt. No. 169 at 12; *see* Dkt. No. 170 at 6.

      The few responses that Elysium does provide are unpersuasive. It speculates that "ChromaDex likely compiled much of the relevant material already in responding to the Warning Letter [from the FDA and FTC] and in preparing its 8-K." Dkt. No. 170 at 6. That argument might have some force if it were backed by a reasonable basis in fact. It is not. The materials Elysium has put before the Court show that ChromaDex chose to correct the alleged violations rather than respond to the federal regulators; the 8-K merely reports those actions. There is no evidence that ChromaDex was asked to, or did, put together a substantive response. Elysium also argues that, at least as of early January 2021, no depositions had been scheduled or taken and that ChromaDex had served additional written discovery on Elysium as recently as December 18, 2020. *See* Dkt. No. 170 at 6. But that depositions have not been taken does not answer ChromaDex's point that the addition of the new allegations would require substantial additional new document discovery after documents have already been searched and reviewed

and perhaps after document discovery is complete. Nor does the claim that ChromaDex has served additional written discovery based on the allegations already in the case provide sufficient justification for the addition of new allegations that would require both sides to serve additional requests and produce additional documents.

Finally, permitting the amendment would delay resolution of this case. The case has been pending since September 2017. All fact discovery would have been completed by October 11, 2020, *see* Dkt. No. 150, but for the difficulties Elysium had producing documents, *see* Dkt. Nos. 152, 155, 157, 159-160. The extension the Court granted on August 21, 2020 was justified only based on concerns regarding COVID-19. As things now stand, fact discovery must be completed by February 9, 2021. The addition of these new allegations would add many months to the fact discovery schedule, further substantially delaying trial. The Court has extended the discovery deadlines many times. ChromaDex, and Elysium, are entitled to a decision on their claims. Elysium has not provided justification for the Court to delay doing so once again.

The parties extensively debate whether the amendment would be futile, with Elysium arguing that the new allegations provide colorable grounds for relief, *see* Dkt. No. 167 at 14, Dkt. No. 170 at 7-10, and ChromaDex arguing that the allegations do not state a claim, *see* Dkt. No. 169 at 13-18. The Court need not, and does not, reach that issue. Each of the foregoing grounds, independently and especially in combination, provide sufficient reason to deny Elysium's motion.

**CONCLUSION**

The Clerk of Court is respectfully directed to close Dkt. No. 166, which is GRANTED IN PART and DENIED IN PART. The Clerk of Court is also directed to close Dkt. No. 157, which no longer remains pending.

Dated: January 19, 2021
      New York, New York

_____
      LEWIS J. LIMAN
      United States District Judge