```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/5/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
:
:
:
IN RE ELYSIUM HEALTH-CHROMADEX              :
LITIGATION                                   :         17-cv-7394 (LJL)
:
:         OPINION & ORDER
:
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Elysium Health, Inc. ("Elysium") moves, pursuant to Fed. R. Civ. P. 37(a) and Rule 4(B) of this Court's Individual Practices in Civil Cases, for an order compelling defendant ChromaDex, Inc. ("ChromaDex") to produce computer spreadsheets and other work papers prepared in connection with the work of ChromaDex's damages expert, Lance Gunderson (the "Requested Materials"). Dkt. No. 181.

ChromaDex served the damages report of Mr. Gunderson on March 4, 2021, which includes a list of the information relied upon in that report. The report contains Mr. Gunderson's opinions on ChromaDex's damages and "various damages aspects pertaining to this action," including his opinion of the amount of ChromaDex's damages under alternative damages scenarios should Elysium be found liable on one or more of ChromaDex's claims." Dkt. No. 182 at 1. It also contains approximately thirteen schedules that appear to be excerpted and converted from Microsoft Excel format into a static PDF, thereby concealing the underlying calculations that resulted in Mr. Gunderson's damages analysis. Dkt. No. 181 at 1. Elysium seeks the underlying calculations, which it calls the Requested Materials, asserting that they "are critical to understanding, verifying, and analyzing Mr. Gunderson's alleged damages analysis." *Id.* It claims that the Requested Materials are discoverable because "they contain the math used

by Mr. Gunderson to formulate his opinion on damages." *Id.* at 2.

ChromaDex responds that Mr. Gunderson's report contains a schedule of all of the information he reviewed and considered in preparing his report and that Elysium has access to every document listed on the schedule because it was either exchanged in discovery or is in the public domain. It also asserts that Mr. Gunderson's calculations are reflected in the final expert report in a series of schedules attached to the report that lay out the figures upon which Mr. Gunderson's opinion is based, including the data upon which he based those amounts and the underlying documents from which he derived the data. Dkt. No. 182 at 1-2. What Elysium claims is missing, ChromaDex argues, are the draft or unreported calculations and the work papers that resulted in those calculations. In other words, ChromaDex asserts that it did not omit the data upon which Mr. Gunderson based his opinions but some of the intermediate calculations and thinking that resulted in those calculations.

The issue presented is addressed by the expert disclosure provisions of Rule 26. Rule 26(a)(2) requires a party to disclose the identity of its expert and to accompany the disclosure with a written report that contains, among other things, "the facts or data considered by the witness in forming [his opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii). The "facts or data" language was added to Rule 26(a)(B) in 2010 from an earlier formulation that required disclosure of the "data or other information." Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee Notes to the 2010 amendment. The Advisory Committee Notes to the 2010 amendment explain that

> The refocus of disclosure on "facts or data" [wa]s meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

*Id.*

At the same time, Rule 26(b)(4) protects from disclosure "drafts of any report or disclosure required under Rule 26(a)(2)," Fed. R. Civ. P. 26(b)(4)(A), and "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)," Fed. R. Civ. P. 26(b)(4)(B). An expert's draft report is protected from disclosure "regardless of the form in which the draft is recorded." *Id.* The Advisory Committee Notes reflect that protection "applies regardless of the form in which the draft is recorded, whether written, electronic, or otherwise." Fed. R. Civ. P. 26(b)(4), Advisory Committee Notes to the 2010 amendment.

The 2010 amendments thus reflect a recognition that it is not uncommon for an expert retained to testify in a matter to have counsel or another consulting firm assist with the initial preparation and analysis that goes into an expert report and for counsel to discuss alternative theories and approaches with the expert before the expert formulates her final opinion. There is value in protecting such information from disclosure. *See Deangelis v. Corzine*, 2016 WL 93862, at *4-5 (S.D.N.Y. Jan 7, 2016) (discussing history of 2010 amendments and noting that the prior disclosure rules had the "undesirable" effect of chilling communication between counsel and the expert, often requiring attorneys to hire two sets of experts, one of whom was engaged for consultation only). Under the 2010 amendments, so long as the expert's opinions and all of the facts and data considered by the expert in formulating those opinions are disclosed, the initial or rough draft analysis of those facts and data that ultimately results in the report need not be disclosed, regardless of whether those drafts are prepared by the expert herself or in consultation with counsel. An expert's "spreadsheets, graphs, and analyses . . . [which] are interpretations of data that reflect counsel's mental impressions and result from the expert's and

counsel's collaborative efforts to organize, marshal and, present data" are "separate and distinct from the underlying facts and data themselves." *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 591 (Fed. Cl. 2016). Likewise, "spreadsheets, graphs, presentations, and charts are protected under Rule 26(b)(4)(B), so long as the documents were prepared by the testifying expert to be included in draft expert reports." *Id.*; *see also Cnty. of Maricopa v. Office Depot Inc.*, 2019 WL 5066808, at *24 (D. Ariz. Oct. 9, 2019) (column in a spreadsheet attached to the expert report entitled "Notes" and which reflected the expert's "thinking and questions regarding the items that [he was] categorizing" constituted work product that was not required to be disclosed); *Plexxikon Inc. v Novartis Pharm. Corp.*, 2019 WL 8508083, at *4 (N.D. Cal. May 3, 2019) ("[A]lternative analyses, testing methods, or approaches to the issues" are not "mandatory to disclose"); *Deangelis*, 2016 WL 93862, at *4-5 (recognizing that an expert's prepared chart used in a draft expert report was properly protected).

Elysium has not established that the Requested Materials constitute "facts or data," or that it is entitled to such materials under Rule 26(a)(2). It offers no evidence to refute ChromaDex's representation that the Requested Materials constitute Mr. Gunderson's draft and unreported calculations that he prepared in the drafting process and that reflect his communications with counsel. *See* Dkt. No. 182. That the Requested Materials reveal Mr. Gunderson's math or that they would be helpful to understanding, verifying, and analyzing the damages analysis is not sufficient. As long as Elysium has the underlying facts and data and the conclusions that Mr. Gunderson reached from that data, it has the ability to calculate the math for itself and to determine whether or not Mr. Gunderson's calculations are correct or persuasive.

Elysium's remaining arguments are not persuasive. It argues that Rules 26(b)(4)(C)(ii) and (iii) exempt from privilege claims any documents that "identify facts or data that the party's

attorney provided and that the expert considered in forming the opinions to be expressed" and/or "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed," and that so long as the Requested Materials contains such facts or data or assumptions, they are required to be disclosed. Dkt No. 181 at 3 (quoting Fed. R. Civ. P. 26(b)(4)(C)(ii)-(iii)). That argument proves too much. Taken literally, it would require disclosure of every draft every report and every communication with counsel that mentioned a fact that the expert considered and thus would create an exception that would swallow the rule protecting drafts of expert reports regardless of form. As the Advisory Committee Notes reflect, the function of Rule 26(b)(4)(C)(ii) and (iii) is more limited—it is to permit discovery "to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed" and "to identify any assumptions that counsel provided to the expert and that the expert relied upon informing the opinions to be expressed." Advisory Committee Notes to the 2010 amendment; *see also* Fed. R. Civ. P. 26(b)(4)(C)(ii)-(iii). It does not require production of each underlying document that contains the facts considered or the assumptions upon which the expert relied.

Second, Elysium argues that its demand for the Requested Materials constitutes a "routine request." Dkt. No. 181 at 2. However, the cases upon which it relies do not support the contention that a demand for the materials it now requests is routinely, if ever, granted. *United States Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co.*, 2002 WL 15652 (S.D.N.Y. Jan. 7, 2002) involved the prior version of Rule 26(a)(2), which was amended in 2010 after *Braspetro* specifically to make clear that materials provided by counsel to an expert could be protected by the work product doctrine. Even then, the claim in *Braspetro* was for documents (i.e., facts and data) provided to the expert, which the court was required to assume (in the absence of evidence

5

to the contrary) that the expert considered in forming its expert opinion.[1]  *Jones v. Nat'l Council of Yong Men's Christian Ass'ns. of the United States*, 2011 WL 3273868, at *2 (N.D. Ill. July 28, 2011) is even further afield.  While the decision post-dated the 2010 amendments to the expert discovery rules, it did not address those amendments because the decision did not involve expert discovery at all.  The court held that where a party had produced performance rating summaries of its employees that were relevant to the litigation and where it maintained such documents in computer-searchable format in the normal course of its business, the party was required to produce the data in that format "even if Defendants previously produced the same information in a different document or format."  *Id.*  That ruling is unexceptional and does not establish Elysium's entitlement to the information it requests here.

From the record before the Court, Elysium has the "facts and data" upon which Mr. Gunderson relied and that are necessary to cross-examine him at deposition.  Elysium can question Mr. Gunderson about facts and data that are not on the appendix and what he therefore may have missed in forming his opinion on damages.  Elysium can also question Mr. Gunderson about how he treated the facts and data upon which he relied and how those facts led him to the computations and calculations that are the basis for his opinions.  It can, for example, have its own consulting expert take those same facts and data upon which Mr. Gunderson relied and determine whether alternative approaches to the facts could have led to a higher damages calculation and probe with Mr. Gunderson why he chose the methodology that he chose and not some alternative methodology.  It can, of course, also question Mr. Gunderson about whether he

---

[1] *Braspetro* also involved an index and searching aids used by the expert which the court—applying the predecessor to Rule 26—concluded were not protected from production because "even attorney work product considered by an expert must be produced."  2002 WL 15652, at *9.

has disclosed all of the facts and data he considered in formulating his opinions and, if he has not disclosed all such facts and data, demand their production.  What Elysium cannot do is piggyback on the work product of ChromaDex and its counsel to discover from that work product what alternative methodologies Mr. Gunderson explored in his draft work, what results those methodologies might have yielded, and why Mr. Gunderson chose not to adopt those methodologies.  That material does not constitute "facts or data."  If Elysium is interested in the expert's answers as to why he selected certain methodologies and what other methodologies he considered and did not adopt, it will have to do the work and inquire of those subjects at deposition.

      The motion to compel is DENIED.  Dkt. No. 181.

      SO ORDERED.

Dated: April 5, 2021
      New York, New York

                                          LEWIS J. LIMAN
                                          United States District Judge